CHANCERY.    Talbott's Ex'rs. &c. *vs* Bell's Heirs, &c.

Case 77.    APPEAL FROM THE WOODFORD CIRCUIT.

*Lapse of time.    Trust and Trustees.    Vendor and vendee.*
*Estoppel.*

April 17.    JUDGE BRECK delivered the opinion of the Court.

The case stated.    IN 1797, George Horine instituted a suit in Chancery in the Franklin District Court, against Jeremiah Craig, claiming the superior equitable title, under an entry in the name of James Gordon, to a tract of land in the county of Woodford, and praying that Craïg, who was alledged to hold an elder adversary legal title to the land, might be decreed to surrender it to him. In October 1801, process having been duly served upon Craig, and he having failed to answer, Horine's bill was taken for confessed against him, and a decree rendered, giving Horine two hundred and seventeen acres of land, and directing a conveyance thereof to him by Craig, on or before the 1st day of December following—and that Craig, and all others in possession under, or claiming title from him, should, within the same period, deliver up quiet and peaceable possession of the premises to Horine. A few days after the rendition of this decree, John Craig conveyed the 217 acres of land to Isham Talbott, who had purchased from Horine during the pendency of the suit, and prior to the decree.

It appears that John Craig held the elder legal title, in trust for his brother Jeremiah, and that at the instance of Talbott, he made the conveyance to him, as being entitled by purchase from Horine, to the benefit of his decree, and with a view to the compliance of so much of the decree as directed a conveyance by Jeremiah Craig to Horine.

Talbott obtained possession of the land in virtue of Horine's decree, early in the year 1802, and in 1806, sold it, by executory contract to Nicholas Lafon, who, and those claiming under him, have ever since continued in possesson.

This suit of Horine against Jeremiah Craig, was subsequently brought by Craig to this Court, and the decree reversed, and the causes remanded to the General Court, to which suits in the Franklin District Court had been transferred. The decree was rendered in 1809, and the cause reversed and placed upon the docket of the General Court, during the same year.

Amended pleadings were filed by Horine, making John Craig and others parties, and the cause was again finally heard in 1820, and a decree rendered dismissing Horine's bill. This decree was affirmed by this Court in 1821, and its mandate returned and entered in the General Court, in July of that year, when a motion was made by the defendants, for a rule upon the complainant, to show cause why a writ of restitution should not issue. The motion was continued, and no further proceeding had in reference to it, or to the suit in any way in that Court, so [far as appears from any thing in the record in this case.

In September, 1822, Jeremiah Craig instituted this suit in Chancery, against Talbott and Lafon, in the Woodford Circuit Court, alledging the foregoing facts, and praying that Talbott might be decreed to convey to him the title acquired by his deed from John Craig; that the possession might be restored, and that Talbott and Lafon be decreed to account for rents and profits. A memorandum was appended to the original bill of Craig as follows: "This bill is filed for the benefit of the heirs of Thomas Bell and others, purchasers under Jeremiah Craig." This memorandum was signed by the counsel for Craig. Process was shortly afterwards served upon the defendants, and they answer in 1823. Lafon admits his purchase from Talbott in 1806—denies having any knowledge of the allegations in the complainant's bill, in reference to the suit and controversy between Horine and the Craigs, or of the title of the complainant, and in regard to those matters, refers to and relies upon the answer of his co-defendant, Talbott. He relies upon his possession, and that of his co defendant, in bar of the relief sought by complainant.

Talbott admits that he instituted the suit in the name of Horine, and that during its pendency he purchased Horine's claim, and received from him a deed of conveyance. That during the progress of the suit of Horine against Craig, he discovered that John Craig, instead of Jeremiah, had the elder legal title to the land, sought to be recovered, and that to avoid the expense and delay in bringing John Craig before the Court, he applied to him and obtained his promise to convey to him the land, in the event Horine should obtain a decree, which might be recovered against Jeremiah Craig, and which conveyance was made accordingly. Whether he obtained possession in virtue of a *habere facias*, issued upon Horine's decree, he is not certain, and denies having evicted any person in possession under Jeremiah Craig. He admits the sale to Lafon, and that he executed to him his bond for a conveyance with general warranty. He denies any personal knowledge that John Craig held the land in trust for Jeremiah Craig. He denies that he took possession in virtue of the deed from John Craig, and relies upon lapse of time in bar of the relief sought.

From the time the answers of Lafon and Talbott were filed, the case continued without any preparation or step being taken in it, except an amended answer filed by Talbott in 1827, and the suggestion of the death of Lafon in 1831, till 1839, when the heirs of Jeremiah Craig, he having died in the mean time, uniting with the heirs of Thomas Bell, exhibited their bill of revivor and supplemental bill, alledging that Jeremiah Craig had sold and conveyed the land in 1796, to Bell, for whose benefit, or the benefit of his heirs, the original bill had been filed, and the suit prosecuted, and praying that the suit might be revived in the names of the heirs of said Jeremiah, and such decree rendered in reference to the title, possession, rents and profits of the land as the heirs of Bell might be entitled to. John Craig, Talbott and Lafon having also died, their representatives and heirs were made parties.

The Court below was of opinion that complainants

were entitled to relief, and accordingly decreed a conveyance of the land from Talbott's representatives to Bell's

heirs, and that Lafon's representatives also relinquish to them all their claim.

The Court was also of opinion, that the complainants were intitled to compensation for rents, and appointed a Commissioner to take an account of rents, improvements and waste, if any, to enable the Court to render a final decree as to that branch of the case. From that decree, the representatives of Talbott and Lafon have appealed to this Court.

The counsel for the appellants insist that the decree is wholly erroneous—that the complainants were entitled to no relief, and that their bill should have been dismissed.

In the revision of the case, the first question for consideration, is whether Jeremiah Craig had any claim for relief, either for himelf or Bell's heirs, in a Court of Equity.

In the consideration of this question, we think we are authorized to assume, 1st. That John Crrig held the legal title to the land in controversy, prior to the conveyance made by him to Talbott, and in trust for Jeremiah Craig. It is so recited in his deed to Talbott.

In the amended bill filed in the case of Horine, in 1809, by Horine's heirs, it is so alledged, and John Craig in his answer in that suit, expressly admits that he so held it.

2d. That Talbott's representatives are estopped by the recitals in the deed from John Craig to their testator, to deny that the land was so held, and that their testator had notice thereof.

*A purchaser is estopped to deny that which appears in the deeds through which he claims title.*

3d. That Lafon having entered under Talbott by executory contract during the pendency of Horine's suit, and the deed from Craig to Talbott being of record, and also notice of the nature of Talbort's title, his representatives occupy no more favorable attitude than the representatives of Talbott.

*A pendente lite purchaser must abide the decision of the case of his vendee.*

4th. That Talbott obtained possession of the land in virtue of Horine's decree, and by the aid of a writ of possession that issued thereon. The issuing of the writ is admitted by the answer of Talbott, and that under it. the Sheriff delivered him or his agent possession, is satisfac-

TALBOTT'S EXEC-
UTORS, &c.
vs
BELL'S H'RS &c.

torily established, by the testimony of the two Hintons, to whose depositions we perceive no valid objection.

5th. That when Talbott thus obtained possession, Thos. Bell was in possession, by his tenant, holding under Jeremiah Craig, and was evicted.

6th. Talbott, as counsel, instituted the suit of Horine, and prosecuted it till its final termination, and that after its commencement, and before the first decree therein, he purchased, without recourse, Horine's claim.

7th. That Jeremiah Craig, in 1796, conveyed the land by general warranty, to Thomas Bell.

These positions being assumed, we think it very clearly results, that Jeremiah Craig was entitled to demand in a Court of Equity, a surrender by Talbott of the title, which he had acquired from John Craig. Whether the title had been acquired by Talbott in virtue of his purchase from Horine, and in consideration, and in obedience to the decree of Horine against Jeremiah Craig; or by some arrangement between him and John Craig, unconnected with the suit of Horine, is wholly unimportant. He obtained the conveyance with notice of the trust, and consequently received it subject to it. Nor is the right of Craig to relief, in reference to the title, at all affected by his deed to Bell. It is true he had but an equity, and that equity he had, by his deed, transferred to Bell; but he had rendered himself responsible, by his covenants in the deed for the fee simple title. That title John Craig held in trust for him, but at the instance of Talbott, had conveyed to him—Talbott was in equity bound to surrender it. But the right of Craig to demand a surrender of the title from Talbott, did not depend alone upon the ground that he had obtained it from his Trustee, with full knowledge of the trust, but upon the ground that he had obtained it by virtue and in consideration of Horine's decree against him, which had been reversed. That it was so obtained, is evident from the recitals in the deed. The deed, after reciting the decree against Jeremiah Craig in favor of Horine, and the conveyance from Horine to Talbott, proceeds, "and the patent for the 600 acres having issued to him, the said John Craig, as Trustee, and for the use and benefit of him, the said Jeremiah Craig—

A vendor whose vendee has been evicted, may maintain a bill in chancery to reinstate his vendee in the legal title, and possession the land sold.

Now, in consideration of the premises, and in obedience to the said decree, the said John Craig, bargains," &c. Besides, Talbott in his answer substantially admits that he obtained the deed by virtue of the decree, and as a compliance of so much thereof, as directed a conveyance by Jeremiah Craig.

We are of opinion, therefore, that Jeremiah Craig, as against Talbott, so far as regarded the title acquired by him of John Craig, might well appeal to a Court of Equity for relief, and that lapse of time opposed no obstacle to his obtaining it.

But it is strenuously contended that Craig was destitute of any interest which authorized him to appeal to a Court of Equity for a restoration of the possession of the land, either to himself or Bell's heirs.

It will be recollected that the object of Horine's suit was to obtain the possession of the land, and also the elder legal title, alledged to be in Jeremiah Craig, who was alone made defendant. The Chancellor renders a decree, by which the complainant, or rather Talbott, who by his purchase, became entitled to all the benefit of the decree, obtained the entire object of the suit. By virtue of the decree, as we have seen, he obtained the title and also the possession of the land. The decree directed "Jeremiah Craig and all others in possession under or claiming title from him, to surrender the possession." Talbott, in accordance with the order of the Court, and by the aid of its process, turned out Bell, who was in possession, claiming title under Jeremiah Craig.

Whether the decree was erroneous or void in directing a surrender of the possession by all those holding under Craig, or whether Bell was or not legally evicted, we do not deem it important to enquire. It is sufficient that Talbott regarded it as a valid decree in that respect, and used the process of the Court accordingly, in enforcing it. Bell also acquiesced in it as such, and looked to Craig for protection in the reversal of the decree, and for the further and final defence of the suit; as Bell claimed under Craig, he could make no defence which Craig could not make.

Lapse of time in this case presents no bar to a suit in chancery to compel the surrender of a legal title obtained from the trustee, and under a decree which is reversed.

When title and possession have both been obtained by a decree which is afterwards reversed, the Chancellor may, should decree a surrender of the possession where he found it.

TALBOTT'S EXEC-
UTORS &c.
vs
BELL'S H'RS &c.

The decree was reversed by Craig, but as the suit was not thereby finally disposed of, no effort was made for the restoration of the possession or the title, but Talbott was permitted to hold both till the final termination of the suit. Craig then, or shortly afterwards, exhibited his bill, praying that the title and the possession be restored. We have seen that in regard to the title, his equity was clear and available, and it seems to us that it is equally so in regard to the possession; both had been obtained in virtue of the same decree against him, the one from his trustee the other from his vendee. Upon the reversal of the decree, he was unquestionably entitled, as against Horine or Talbott, to have both restored, and restored to himself. But as the object of his bill seems to have been to perfect directly the title in the heirs of his vendee, and to have the possession restored to them, they were, for that object, proper and necessary parties; but the delay in their coming into the case, did not in the slightest degree, affect or impair the equity of the complainant in his original bill. They make no new issue and bring nothing into the case, which destroys or impairs his equity. Whether the title and possession are restored to Craig or at his instance to the heirs of his vendee, is a matter, in reference to which Talbott has no right to interfere nor complain, and from which he can derive no advantage. It is sufficient that he obtained them in virtue of a decree against Craig, and that that decree has been reversed.

We are also of opinion that the equity of Craig is not bared or affected by lapse of time. The decree under which Talbott obtained the title and possession, was reversed in 1809, the suit finally disposed of in 1821, and Craig exhibited his bill in 1822. Whether Bell could have sought relief immediately upon his eviction, as we have before remarked, we have not deemed important to enquire. Talbott treated the decree against Craig as authorizing the eviction of Bell, who acquiesced in that construction of it. Talbott cannot now, therefore, render available a different construction.

One who has obtained and held possession under a decree which is ultimately reversed, is liable for rents.

We are also, satisfied with that portion of the decree which renders the representatives of Talbott and Lafon responsible for rents.

Wherefore, the decree is affirmed and the appellees are entitled to their costs in this Court.

*Morehead & Reed and Robertson* for appellants: *Monroe and Goodloe* for appellees.